# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

TAMARA L. WEBSTER,        )
                                      )
                Plaintiff,      )
                                      )   CIVIL ACTION
v.                                  )
                                      )   No. 09-4005-JAR-GBC
                                      )
MICHAEL J. ASTRUE,        )
Commissioner of Social Security,   )
                                      )
                Defendant.      )
_____ )

## REPORT AND RECOMMENDATION

Plaintiff seeks review of a decision of the Commissioner of Social Security (hereinafter Commissioner) denying disability insurance benefits (DIB) and supplemental security income (SSI) under sections 216(i), 223, 1602 and 1614(a)(3)(A) of the Social Security Act.  42 U.S.C. §§ 416(i), 423, 1381a, and 1382c(a)(3)(A)(hereinafter the Act).  Finding error in the Commissioner's evaluation of the opinion evidence, the court recommends the decision be REVERSED, and judgment be entered in accordance with the fourth sentence of 42 U.S.C. § 405(g) REMANDING the case for further proceedings.

## I.  Background

Plaintiff applied for DIB and SSI on April 17, 2006 alleging disability since November 19, 2003.  (R. 9).  Her applications

were denied initially and upon reconsideration, and plaintiff requested a hearing before an administrative law judge (ALJ). (R. 9). Plaintiff's request was granted, and plaintiff appeared with a non-attorney representative at a hearing before ALJ Edward C. Graham on June 6, 2008. <u>Id.</u> At the hearing, testimony was taken from plaintiff and from a vocational expert. (R. 9, 423-24). On July 24, 2008, the ALJ issued a decision finding plaintiff is able to perform her past relevant work as a hand packager and is therefore not disabled within the meaning of the Act and the regulations. (R. 9-15).

In the decision, the ALJ found plaintiff was insured for DIB through December 31, 2008 and has not engaged in gainful activity since her alleged onset date, November 19, 2003. (R. 11). He found that plaintiff has a severe combination of impairments consisting of hypertension, obesity, diabetes, and bipolar disorder, but that no impairment or combination of impairments meets or equals the severity of any impairment in the Listing of Impairments, 20 C.F.R., Pt. 404, Subpt. P, App. 1. <u>Id.</u>

The ALJ summarized the record evidence and plaintiff's allegations regarding her symptoms. (R. 12-14). He found plaintiff's allegations not credible because they are inconsistent with her activities, inconsistent with her social life, inconsistent with her reports to her therapist, and inconsistent with the fact that she has no criminal record. (R.

12, 14).  The ALJ considered the medical source opinion of Sharon

Carlson, plaintiff's social worker, but rejected it because

(1) it is not consistent with Ms. Carlson's consistent assignment

of GAF[1] scores in the 70's, (2) it is not consistent with a lack

of emergency psychiatric treatment; and, (3) plaintiff admits her

greatest psychiatric exacerbation occurred in 2001 when she was

working at a full-time job.  (R. 13).  The ALJ assessed plaintiff

with the residual functional capacity (RFC) to perform medium

work, additionally restricted by mild to moderate limitations in

the mental "capacities to understand and remember tasks, sustain

concentration and persistence, socially interact with the general

public, and adapt to workplace changes."  (R. 11-12).

Based upon the RFC assessed and the testimony of the

vocational expert, the ALJ determined plaintiff is able to

perform her past relevant work as a hand packager, both as she

---

[1]Global Assessment of Functioning.  A GAF score is a
subjective determination which represents "the clinician's
judgment of the individual's overall level of functioning."  Am.
Psychiatric Ass'n, Diagnostic and Statistical Manual of Mental
Disorders (DSM-IV) 30 (4th ed. 1994).  The GAF Scale ranges from
100 (superior functioning) to 1 (persistent danger of severely
hurting self or others, persistent inability to maintain minimal
personal hygiene, or serious suicidal act with clear expectation
of death).  Id. at 32.  GAF is a classification system providing
objective evidence of a degree of mental impairment.  Birnell v.
Apfel, 45 F. Supp. 2d 826, 835-36 (D. Kan. 1999) (citing Schmidt
v. Callahan, 995 F. Supp. 869, 886, n.13 (N.D. Ill. 1998)).
    A GAF score in the range of 71-80 indicates "**If symptoms are
present, they are transient and expectable reactions to
psychosocial stressors . . .; no more than slight impairment in
social, occupational, or school functioning**."  DSM-IV, at 32.

performed the work in the past and as the work is generally performed in the economy. (R. 14). Consequently, he concluded that plaintiff is not disabled within the meaning of the Act, and denied plaintiff's applications. (R. 15).

Plaintiff sought, but was denied review by the Appeals Council. (R. 2-5). Therefore, the ALJ decision is the Commissioner's final decision. Id. at 4; Blea v. Barnhart, 466 F.3d 903, 908 (10th Cir. 2006). Plaintiff now seeks judicial review of the final decision.

## II. Legal Standard

The court's review is guided by the Act. 42 U.S.C. § 405(g). Section 405(g) provides, "The findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive." The court must determine whether the factual findings are supported by substantial evidence in the record and whether the ALJ applied the correct legal standard. Lax v. Astrue, 489 F.3d 1080, 1084 (10th Cir. 2007); White v. Barnhart, 287 F.3d 903, 905 (10th Cir. 2001). Substantial evidence is more than a scintilla, but less than a preponderance, and it is such evidence as a reasonable mind might accept to support a conclusion. Zoltanski v. F.A.A., 372 F.3d 1195, 1200 (10th Cir. 2004); Gossett v. Bowen, 862 F.2d 802, 804 (10th Cir. 1988). The court may "neither reweigh the evidence nor substitute [it's] judgment for that of the agency." White, 287

-4-

F.3d at 905 (quoting Casias v. Sec'y of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991)); Hackett v. Barnhart, 395 F.3d 1168, 1172 (10th Cir. 2005). The determination of whether substantial evidence supports the Commissioner's decision, however, is not simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by other evidence or if it constitutes mere conclusion. Gossett, 862 F.2d at 804-05; Ray v. Bowen, 865 F.2d 222, 224 (10th Cir. 1989).

An individual is under a disability only if that individual can establish that she has a physical or mental impairment which prevents her from engaging in substantial gainful activity and is expected to result in death or to last for a continuous period of at least twelve months. 42 U.S.C. § 423(d). The claimant's impairments must be of such severity that she is not only unable to perform her past relevant work, but cannot, considering her age, education, and work experience, engage in any other substantial gainful work existing in the national economy. Id.

The Commissioner uses a five-step sequential process to evaluate whether a claimant is disabled. 20 C.F.R. §§ 404.1520, 416.920 (2008); Allen v. Barnhart, 357 F.3d 1140, 1142 (10th Cir. 2004); Ray, 865 F.2d at 224. "If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary." Williams v. Bowen, 844 F.2d 748, 750 (10th Cir. 1988).

In the first three steps, the Commissioner determines whether claimant has engaged in substantial gainful activity since the alleged onset, whether she has severe impairments, and whether the severity of her impairments meets or equals the severity of any impairment in the Listing of Impairments (20 C.F.R., Pt. 404, Subpt. P, App. 1). Id. at 750-51. If plaintiff's impairments do not meet or equal the severity of a listing, the Commissioner assesses claimant's RFC. 20 C.F.R. §§ 404.1520, 416.920. This assessment is used at both step four and step five of the sequential evaluation process. Id.

After assessing claimant's RFC, the Commissioner evaluates steps four and five--whether the claimant can perform her past relevant work, and whether she is able to perform other work in the economy. Williams, 844 F.2d at 751. In steps one through four the burden is on claimant to prove a disability that prevents performance of past relevant work. Dikeman v. Halter, 245 F.3d 1182, 1184 (10th Cir. 2001); Williams, 844 F.2d at 751 n.2. At step five, the burden shifts to the Commissioner to show other jobs in the national economy within plaintiff's capacity. Id.; Haddock v. Apfel, 196 F.3d 1084, 1088 (10th Cir. 1999).

Here, plaintiff claims the ALJ erred in applying the legal standard at step three by failing to apply the psychiatric review technique to assess the severity of plaintiff's mental impairments, erred in weighing the opinion evidence, and

consequently erred in assessing plaintiff's mental RFC. (Pl. Br. 21-32). The Commissioner argues that the ALJ applied the correct standard in his step three evaluation, that plaintiff did not allege before the ALJ that her condition meets or equals the severity of a listed impairment, that although the ALJ did not specifically name the psychiatric review technique, he applied the technique and "incorporated the pertinent findings and conclusions based on the technique into his written decision" (Comm'r Br. 7), and that any step three error is harmless because the record evidence cannot support a finding that plaintiff's condition meets or equals a listing. (Comm'r Br. 4-10). He argues that the ALJ properly evaluated all of the medical opinions (Comm'r Br. 11-15), and properly found plaintiff is able to perform her past relevant work. Id. at 17-18.

## III. Evaluation at Step Three

Although the ALJ's step three analysis consists of one sentence (R. 11, finding no. 4), both plaintiff and the Commissioner expend lengthy arguments on the step three errors alleged by plaintiff. (Pl. Br. 21-25); (Comm'r Br. 4-10); (Reply 2-10). Each party presents his view that the record evidence either requires a finding that listing level cannot be met or equaled (Comm'r Br. 8-10), or that it must be met or equaled. (Reply 3-10).

The court is without authority to weigh the evidence in the first instance, or substitute its judgment for that of the Commissioner. <u>Cagle v. Califano</u>, 638 F.2d 219, 220 (10th Cir. 1980)(citing <u>Consolo v. Fed. Maritime Comm'n</u>, 383 U.S. 607, 620 (1966)); <u>see also</u>, <u>Clifton v. Chater</u>, 79 F.3d 1007, 1009 (10th Cir. 1996)("this court should not properly engage in the task of weighing evidence in cases before the Social Security Administration"). Therefore, since the ALJ's only explicit discussion of step three consists of a finding that plaintiff's condition does not meet or equal the severity of a listed impairment, and since the Commissioner admits that the ALJ did not specifically acknowledge the psychiatric review technique, but argues that he applied the technique and incorporated the pertinent findings elsewhere (but not explicitly) in his decision, the court remains firmly convinced that remand is necessary either because the ALJ did not apply the correct legal standard at step three or because he did not properly explain the basis of his step three finding.

The court declines the parties' invitation to weigh the evidence for itself, or the Commissioner's invitation to craft a post-hoc justification for the ALJ's finding. A decision should be evaluated based solely on the reasons stated therein. <u>Robinson v. Barnhart</u>, 366 F.3d 1078, 1084 (10th Cir. 2004). It cannot be affirmed on the basis of appellate counsel's post hoc

rationalizations for agency action. <u>Knipe v. Heckler</u>, 755 F.2d 141, 149 n.16 (10th Cir. 1985). Nor may a reviewing court create post-hoc rationalizations to explain the Commissioner's treatment of evidence when that treatment is not apparent from the decision. <u>Grogan v. Barnhart</u>, 399 F.3d 1257, 1263 (10th Cir. 2005). Nonetheless, the court need not rest its decision on a finding regarding application of step three because it also finds error requiring remand in the ALJ's evaluation of the medical source opinions regarding plaintiff's mental impairments.

## IV. Evaluation of Medical Source Opinion Evidence[2]

Plaintiff quotes the opinion of Dr. Berg, a psychologist who examined her, "claimant is able to process simple information and attend to simple tasks. Her speed is low average. Her memory shows mild impairment for recent information. She is able to perform simple tasks at home. However, she is very anxious and labile outside of the home and is given to anger outbursts. Her anxiety and loss of motivation prevent her from being able to leave the home." (Pl. Br. 27)(quoting (R. 182)).[3] Plaintiff

---

[2]The record contains medical evidence regarding plaintiff's physical impairments and plaintiff's mental impairments. However, plaintiff does not allege error in the ALJ's consideration of her physical impairments, and the court's discussion herein relates only to plaintiff's mental impairments and the medical sources who treated, examined, or reviewed the record regarding plaintiff's mental impairments.

[3]Plaintiff's brief cites (R. 183), however (R. 182) is the correct citation for the material quoted.

claims the ALJ failed to discuss, weigh, or consider Dr. Berg's opinion. (Pl. Br. 27). She claims the ALJ cited to the medical opinion of Dr. Blum, a state agency psychologist who reviewed the record, but failed to specify the weight accorded to that opinion. Id. at 28. Finally, plaintiff notes that the ALJ considered the opinion of Ms. Carlson, a clinical social worker who treated plaintiff. Id. She claims the ALJ merely noted the opinion was inconsistent with certain evidence in the record, but did not specifically weigh the opinion; and argues that the inconsistencies noted by the ALJ are not valid reasons to discount Ms. Carlson's opinion. Id. at 29-30.

The Commissioner argues that the ALJ properly evaluated the medical opinions. (Comm'r Br. 11). He argues that the ALJ properly discussed Dr. Berg's examination but admits that the ALJ did not explicitly assign weight to Dr. Berg's opinion. Id. at 11-12. The Commissioner's argument in this regard is not clear but he appears to argue that the ALJ must consider, address, and evaluate the medical source opinions, but he need not assign specific weight to each opinion. Id. at 12. He argues that the "ALJ's written decision need only be sufficiently specific to make clear to any subsequent reviewer the weight the ALJ gave to the medical opinion." (Comm'r Br. 12). The Commissioner argues that the RFC assessed by the ALJ is consistent with Dr. Berg's examination results, and Dr. Berg's assessment that plaintiff's

symptoms prevented her from leaving home was not a clinical observation but, as the ALJ noted, merely a restatement of plaintiff's assertion that she was unable to leave home. Id. The Commissioner also argues that the ALJ properly considered Dr. Blum's assessment, and the ALJ's RFC assessment is consistent with Dr. Blum's assessment, making it "sufficiently clear that the ALJ properly considered Dr. Blum's assessment in formulating Plaintiff's RFC." Id. at 13. Finally, the Commissioner argues that the ALJ properly considered Ms. Carlson's opinion and provided reasons for discounting the opinion which are legally sufficient and supported by substantial evidence in the record. Id. at 13-15.

"Medical opinions are statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of [a claimant's] impairment(s) including [claimant's] symptoms, diagnosis and prognosis." 20 C.F.R. §§ 404.1527(a)(2), 416.927(a)(2)(emphasis added). Such opinions may not be ignored and, unless a treating source opinion is given controlling weight, all medical opinions will be evaluated by the Commissioner in accordance with factors contained in the regulations. Id. §§ 404.1527(d), 416.927(d); Soc. Sec. Ruling (SSR) 96-5p, West's Soc. Sec. Reporting Serv., Rulings 123-24 (Supp. 2009). Those factors are: (1) length of treatment relationship and frequency of examination; (2) the

nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion. 20 C.F.R. §§ 404.1527(d)(2-6), 416.927(d)(2-6).

A physician who has treated a patient frequently over an extended period of time (a treating source)[4] is expected to have greater insight into the patient's medical condition. Doyal v. Barnhart, 331 F.3d 758, 762 (10th Cir. 2003). But, "the opinion of an examining physician [(a nontreating source)] who only saw the claimant once is not entitled to the sort of deferential treatment accorded to a treating physician's opinion." Id. at 763 (citing Reid v. Chater, 71 F.3d 372, 374 (10th Cir. 1995)). However, opinions of nontreating sources are generally given more weight than the opinions of nonexamining sources who have merely

---

[4]The regulations define three types of "acceptable medical sources:"
"Treating source:" a medical source who has provided the claimant with medical treatment or evaluation in an ongoing treatment relationship. 20 C.F.R. §§ 404.1502, 416.902.
"Nontreating source:" a medical source who has examined the claimant, but never had a treatment relationship. Id.
"Nonexamining source:" a medical source who has not examined the claimant, but provides a medical opinion. Id.

reviewed the medical record.  <u>Robinson v. Barnhart</u>, 366 F.3d
1078, 1084 (10th Cir. 2004); <u>Talbot v. Heckler</u>, 814 F.2d 1456,
1463 (10th Cir. 1987) (citing <u>Broadbent v. Harris</u>, 698 F.2d 407,
412 (10th Cir. 1983), <u>Whitney v. Schweiker</u>, 695 F.2d 784, 789
(7th Cir. 1982), and <u>Wier ex rel. Wier v. Heckler</u>, 734 F.2d 955,
963 (3d Cir. 1984)).

A social worker is an "other" medical source, not an
"acceptable medical source" or a "treating source."  20 C.F.R.
§§ 404.1502, 404.1513, 404.1527, 416.902, 416.913, 416.927.
Therefore, a social worker's opinion is not, strictly speaking, a
"medical opinion," and is never entitled to controlling weight.
<u>Id.</u> §§ 404.1527(d)(2), 416.927(d)(2).  Recognizing the reality
that an increasing number of claimants have their medical care
provided by nurse practitioners, physician's assistants, social
workers, and therapists--"other source" health care providers who
are not "acceptable medical sources"--the Commissioner
promulgated SSR 06-3p.  West's Soc. Sec. Reporting Serv., Rulings
327-34 (Supp. 2009).  In that ruling, the Commissioner noted:

> With the growth of managed health care in recent years
> and the emphasis on containing medical costs, medical
> sources who are not "acceptable medical sources," such
> as nurse practitioners, physician assistants, and
> licensed clinical social workers, have increasingly
> assumed a greater percentage of the treatment and
> evaluation functions previously handled primarily by
> physicians and psychologists.  Opinions from these
> medical sources, who are not technically deemed
> "acceptable medical sources" under our rules, are
> important and should be evaluated on key issues such as

impairment severity and functional effects, along with the other relevant evidence in the file.

Id., 330-31.

SSR 06-3p explains that such opinions will be evaluated using the regulatory factors listed above, which are used for evaluating medical opinions; id. at 331-32(citing 20 C.F.R. §§ 404.1527, 416.927); and explains that the ALJ "generally should explain the weight given to opinions from these 'other sources,' or otherwise ensure that the discussion of the evidence in the . . . decision allows a claimant or subsequent reviewer to follow the adjudicator's reasoning, when such opinions may have an effect on the outcome of the case." Id. at 333; see also Frantz v. Astrue, 509 F.3d 1299, 1302 (10th Cir. 2007)(remanding for consideration of a nurse-practitioner's opinions in light of SSR 06-3p).

Regarding plaintiff's mental impairments and the limitations resulting therefrom, the ALJ summarized the opinions of four medical sources: Dr. Berg, Dr. Blum,[5] Sharon Carlson, and another social worker who treated plaintiff between October 2003, and September 2005, Susan Krumm.[6] (R. 12-13). First, he noted

---

[5]The ALJ referred to Dr. Blum as "a Disability Determination Service (DDS) doctor." (R. 13). The portion of the record cited by the ALJ reveals the DDS doctor to be Dr. Blum, the parties' arguments refer directly to the opinion of Dr. Blum, and the court will refer to Dr. Blum herein.

[6]In his discussion, the ALJ refers to Ms. Krumm at "Susan Carlson," but the record cited and the treatment dates discussed

plaintiff's counseling with Ms. Krumm in October and November, 2003, and on September, 23, 2005; and he noted that Ms. Krumm assigned a GAF score of 75 on October 31, 2003 and on September 23, 2005. (R. 12). He correctly noted that a GAF score of 75 "indicates that if symptoms are present, they are transient and expectable reactions to psychosocial stressors and result in no more than slight impairment in social, occupational, or school functioning." Id.(citing DSM IV); see also, n.1 supra.

Next, the ALJ summarized Dr. Berg's examination. Id. at 12-13. The final sentence of the ALJ's summary states: "Dr. Berg diagnosed depression, not otherwise specified, and recounted the claimant's assertion that she is unable to leave her home, except for medical appointments." The ALJ's summary is not an accurate representation of Dr. Berg's report and, as plaintiff asserts, does not reflect consideration of Dr. Berg's opinion. The court cannot find a diagnosis of depression in Dr. Berg's report. In his "SUMMARY," Dr. Berg diagnosed bipolar disorder NOS, intermittent explosive disorder, and "anxiety disorder NOS with symptoms of PTSD and panic." (R. 181). He assigned a GAF score of 38. Id. A GAF in the range from 31 to 40 indicates "**Some impairment in reality testing or communication . . . OR major**

---

confirm that Ms. Krumm is the social worker who treated plaintiff on October 31, 2003 and September 23, 2005, and assessed plaintiff with GAF scores of 75. (R. 12, 183, 189); compare, (R. 12)(citing Ex. 1F, 76-82); with Ex. 1F, 76-82(R. 183-190).

**impairment in several areas, such as work or school, family relations, judgment, thinking, or mood.**" DSM IV at 32(emphasis in original). The ALJ did not mention the GAF score assigned by Dr. Berg.

In the final paragraph of his report, Dr. Berg noted plaintiff's description of some of her symptoms and stated that plaintiff "does not feel able to leave home except for medical appointments." This is apparently the statement to which the ALJ referred in the decision. However, as plaintiff argues, the ALJ did not mention the immediately preceding paragraph which was also in the section of Dr. Berg's report entitled "ABILITY TO PERFORM WORK RELATED ACTIVITIES," was quoted by the court above in summarizing plaintiff's argument, and ended with the sentence, "Her anxiety and loss of motivation prevent her from being able to leave home." (R. 182). This is an affirmative statement presented in Dr. Berg's report, and does not contain a qualifier indicating it is not Dr. Berg's opinion.

As plaintiff argues, the ALJ did not discuss, weigh, or otherwise show that he had considered Dr. Berg's opinions. In fact, it appears that the ALJ briefly summarized Dr. Berg's report, but ignored the opinions apparently contained therein. He did not mention any of the diagnoses made by Dr. Berg, but included a diagnosis which was not made by Dr. Berg. He did not mention the GAF score assigned by Dr. Berg, and he did not

mention Dr. Berg's affirmative statement that plaintiff's symptoms prevent her from being able to leave home.[7] Although an ALJ need not discuss every piece of evidence, he must consider all the evidence, and discuss the evidence supporting his decision, the uncontroverted evidence upon which he chooses not to rely, and significantly probative evidence he rejects. Wall v. Astrue, 561 F.3d 1048, 1074-75 (10th Cir. 2009)(citing Clifton v. Chater, 79 F.3d 1007, 1009-10 (10th Cir. 1996)). He may not, however, selectively abstract evidence in support of his decision and ignore evidence supportive of plaintiff's allegations. Jones v. Astrue, 500 F. Supp. 2d 1277, 1285 (D. Kan. 2007); Owen v. Chater, 913 F. Supp. 1413, 1420 (D. Kan. 1995). It is error for the Commissioner to ignore the evidence as a whole while choosing instead to abstract pieces of evidence favorable to the decision. Id.(citing, O'Connor v. Shalala, 873 F. Supp. 1482, 1491 (D. Kan. 1995); Jones v. Sullivan, 804 F. Supp. 1398, 1406 (D. Kan. 1992); Claassen v. Heckler, 600 F. Supp. 1507, 1511 (D. Kan. 1985)). Here, the ALJ abstracted portions of Dr. Berg's report which are favorable to his decision, but ignored Dr. Berg's opinion and his GAF score which are supportive of plaintiff's allegations. The

---

[7]The court notes that there may be a basis to find that Dr. Berg is not of the opinion that plaintiff cannot leave her home. However, the ALJ did not make such a finding other than by implication without discussion, and he did not explain the basis for his finding. Moreover, the assigned GAF score of 38 seems to support a finding that Dr. Berg is of the opinion plaintiff cannot leave her home. The issue must be decided on remand.

ALJ's error is rendered more egregious because, as discussed above and as will be discussed in regard to Ms. Carlson's opinion, he made much of the relatively innocuous GAF scores assigned by Ms. Krumm but ignored the GAF score of 38 assigned by Dr. Berg and the GAF scores of 48[8] assigned by other treatment providers, Ms. Anderson on September 24, 2007, and Mr. Joseph on June 27, 2007. (R. 131, 140).

The ALJ also summarized the opinion of Dr. Blum:

DDS says limited to simple tasks without contact with members of the general public (Exhibit 1-F: 1-3, 10-20). A psychiatric assessment conducted by a Disability Determination Service (DDS) doctor indicated that the claimant has mild restrictions of activities of daily living; moderate difficulties in maintaining social functioning; moderate difficulties in maintaining concentration, persistence, or pace; and no repeated episodes of extended-duration decompensation (Exhibit 1-F: 18).

(R. 13)(citing (R. 106-08, 115-27)).

As plaintiff argues, the ALJ did not specifically adopt Dr. Blum's opinion, and did not indicate the weight he accorded the opinion. He argues that the court is left to speculate regarding the weight assigned. (Pl. Br. 28). The Commissioner notes that opinions of state agency psychological consultants such as Dr. Blum are to be considered by the ALJ as medical opinions of nonexamining sources and must be addressed in the decision.

---

[8]A GAF score in the range of 41-50 indicates "**Serious symptoms . . . OR any serious impairment in social, occupational, or school functioning.**" DSM IV at 32.

(Comm'r Br. 12-13)(citing SSR 96-6p).  He argues that the ALJ
discussed Dr. Blum's opinion in the decision, that the ALJ's
mental RFC assessment was consistent with Dr. Blum's assessment,
and, therefore, "it is sufficiently clear that the ALJ properly
considered Dr. Blum's assessment in formulating Plaintiff's RFC."
Id. at 13.

The court agrees with the Commissioner that the ALJ
considered Dr. Blum's opinion and addressed it in the decision,
and the opinion is consistent with the mental RFC assessed by the
ALJ.  However, those facts imply that the ALJ accepted Dr. Blum's
opinion over those of Dr. Berg, Ms. Carlson, Ms. Anderson, and
Mr. Joseph, but he did not explain the basis for that
determination.  That is error.  As noted above, the opinion of a
nonexamining source, such as Dr. Blum, who has merely reviewed
the record, is generally considered worthy of less weight than
the opinion of a nontreating source, such as Dr. Berg, who has
examined the plaintiff.  E.g., Robinson, 366 F.3d at 1084.
Moreover, while Ms. Krumm, Ms. Anderson, Mr. Joseph, and Ms.
Carlson are not "acceptable medical sources," they are medical
sources and mental healthcare providers who have treated
plaintiff, and their opinions "are important and should be
evaluated on key issues such as impairment severity and
functional effects, along with the other relevant evidence in the
file."  SSR 06-3p, West's Soc. Sec. Reporting Serv. 330-31.  In

the circumstances presented here, it was error for the ALJ to prefer Dr. Blum's opinion over the other medical sources without explaining his rationale.

Finally, the ALJ noted Ms. Carlson's opinion "that the claimant 'would have difficulty maintaining full-time low stress unskilled employment' due to her emotional instability." (R. 13)(quoting (R. 421)). He rejected Ms. Carlson's opinion because (1) it "is not consistent with Ms. Carlson's consistent assignment of the claimant's GAF scores in the 70's," (2) it is not consistent with a lack of emergency psychiatric treatment; and, (3) plaintiff admits her greatest psychiatric exacerbation occurred in 2001 when she was working at a full-time job. (R. 13). Plaintiff argues that the ALJ did not specifically weigh Ms. Carlson's opinion, but merely noted the opinion was inconsistent with certain evidence in the record, and the inconsistencies noted by the ALJ are not valid reasons to discount the opinion. (Pl. Br. 29-30). The Commissioner argues that the ALJ properly considered Ms. Carlson's opinion and provided reasons for discounting the opinion which are legally sufficient and supported by substantial evidence in the record. (Comm'r Br. 13-15). The Commissioner addresses each of the reasons as cited above, and explains why, in his view, the record evidence supports the reason. Although the ALJ did not state he rejected Ms. Carlson's opinion, a fair reading of the decision

reveals he weighed the opinion, and gave three reasons for
rejecting the opinion.

With regard to reason (1), the Commissioner, correctly, does
not assert that Ms. Carlson repeatedly assigned GAF scores in the
70's, but asserts that "the ALJ indicated he discounted Ms.
Carlson's opinion as it was inconsistent with Plaintiff's
repeated assignment of GAF scores in the 70s." (Comm'r Br. 14).
As quoted above, the ALJ clearly discounted Ms. Carlson's opinion
because it was inconsistent with GAF scores in the 70s <u>repeatedly
assigned by Ms. Carlson</u>. (R. 13). In point of fact, Ms. Carlson
never assigned a GAF score of any degree to plaintiff. (R. 149,
151, 153, 155). The ALJ's error in so stating likely resulted
from his earlier error in stating that "Susan Carlson" assigned
GAF scores of 75 in October, 2003, and November, 2005. (R. 12).
As the court noted above, the GAF scores of 75 were assigned by
Ms. Susan Krumm (<u>supra</u> n.6), and those are the only "GAF scores
in the 70s" the court was able to find in the record. Moreover,
the record contains a GAF score of 38 assigned by Dr. Berg (R.
181), and two GAF scores of 48 assigned by Ms. Anderson, and Mr.
Joseph. (R. 131, 140). These scores were not mentioned in the
decision. Reason (1) is not supported by substantial evidence in
the record and may even be based upon an erroneous understanding
of the record.

Reason (2) is a medical finding which an ALJ is not qualified to make, and for which the ALJ here cites no medical authority. There is simply no indication in this record that an individual who would have difficulty maintaining full-time, low stress, unskilled employment as Ms. Carlson opines; would, of necessity, have recent emergency psychiatric treatment. The ALJ is not qualified as a medical expert to provide such an opinion, and he may not reject a medical source's opinion on the basis of speculation or his own lay opinion. McGoffin v. Barnhart, 288 F.3d 1248, 1252 (10th Cir. 2002).

Finally, the court is simply unable to find the basis for reason (3) in the evidentiary record. The ALJ cites to Exhibit 1-F, 32 (R. 139), for the proposition that plaintiff admits her greatest psychiatric problems occurred in 2001. (R. 13). However, the record cited contains no admission or acknowledgment by plaintiff that her greatest problems were in 2001. (R. 139). Although that page of the record indicates the last time plaintiff hit her husband with a hammer, or broke dishes, was in 2001, it also indicates she "blacked out" and held a knife on her daughter "last year." Id. That record was completed in June 2007, so at the earliest, it refers to an apparently major psychiatric problem in 2006, long after plaintiff's alleged onset date. (R. 141). None of the reasons given for rejecting Ms.

Carlson's opinion are supported by the record evidence.  Thus, remand is necessary for proper weighing of Ms. Carlson's opinion.

The court makes one final comment regarding weighing the medical source opinions in this case.  Here, there is no treating source opinion to which "controlling weight" might be accorded in whole or in part.  Therefore, it is necessary to weigh <u>all</u> of the medical source opinions in accordance with the regulatory factors, remembering the legal standards cited above.  This case illustrates the reason it is necessary to evaluate all of the medical opinions together, especially when controlling weight cannot be accorded to a treating physician's opinion.  It is important to apply the correct standard to all of the opinions together because of "the necessarily incremental effect of [each individual medical source's] report on the aggregate assessment of the evidentiary record."  <u>Lackey v. Barnhart</u>, No. 04-7041, 127 Fed. Appx. 455, 459 (10th Cir. Apr. 5, 2005).  Remand is necessary for the Commissioner to weigh all of the medical source opinions regarding plaintiff's mental condition, including the opinions of Dr. Berg, Dr. Blum, Ms. Krumm, Ms. Anderson, Mr. Joseph, and Ms. Carlson.

In her final argument plaintiff claims error in assessing plaintiff's mental RFC.  Because assessment of RFC is dependent upon evaluation of all of the record evidence together, assessment of RFC in this case necessarily depends upon proper

evaluation of the medical source opinions.  Therefore, it would be premature to address the alleged errors in assessing mental RFC at this time.

**IT IS THEREFORE RECOMMENDED** that the decision below be REVERSED and that judgment be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g) REMANDING the case for further proceedings in accordance with this opinion.

Copies of this recommendation and report shall be delivered to counsel of record for the parties.  Pursuant to 28 U.S.C. § 636(b)(1), Fed. R. Civ. P. 72(b), and D. Kan. Rule 72.1.4, the parties may serve and file written objections to this recommendation within fourteen days after being served with a copy.  Failure to timely file objections with the court will be deemed a waiver of appellate review.  Morales-Fernandez v. INS, 418 F.3d 1116, 1119 (10th Cir. 2005).

Dated this 8th day of December 2009, at Wichita, Kansas.


s:/   Gerald B. Cohn
**GERALD B. COHN**
**United States Magistrate Judge**